CLARA R. SMIT, ESQ.
ATTORNEY AT LAW
100 HORIZON CENTER BLVD
HAMILTON, NJ 08691
(732) 843-6600
ATTORNEY FOR THE PLAINTIFF

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JULIE DOERRMANN, individually** : | |
| **and as executor of the ESTATE OF** : | |
| **ARLINE DOERRMANN** | |
| Plaintiff, : | |
| V. | : CIVIL ACTION NO.: |
| | : |
| **MANOR CARE HEALTH SERVICES** : | |
| Defendant. | : **COMPLAINT AND JURY DEMAND** |
| | : |
| | : |
| | : |
| | : |

The Plaintiff, Julie Doerrmann, residing at 52 Skyline Circle, City of Sewell, County of Gloucester, State of New Jersey, and Arline Doerrmann, deceased, file this Complaint, and would respectfully show the Court as follows:

### NATURE OF CASE

1. On July 26, 1990, Congress enacted the Americans with Disabilities Act, 42 U.S.C. Section 12101 et seq., establishing the most important civil rights for persons

1

with disabilities in our country's history. This action is brought by the plaintiffs, Julie Doerrmann and Arline Doerrmann, against defendant's hospital, in their failure to provide reasonable accommodations for the plaintiffs disability and for discrimination based on disability during plaintiff Arline Doerrmann's care while in defendant hospital. The plaintiffs experienced humiliation and discrimination in violation of their civil rights through Defendant's policies and practices of discrimination on the basis of disability.

2. This action claims that defendant violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et. seq., hereafter NJLAD, the ADA, Section 504 of the Rehabilitation Act, and Section 1557 of the Affordable Care Act as well as other state and common law causes of action. In this action, Plaintiffs suffered damages and now seek declaratory and injunctive relief, and compensatory and punitive damages.

## JURISDICTION AND VENUE

3. Jurisdiction of this court is invoked pursuant to N.J.S.A. 10:-5-1 et. seq, the Americans with Disabilities Act, Title III, 28 USCS Section 12181 et seq and the Rehabilitation Act, 29 USCS Section 794, Section 504 and Section 1557 of the Affordable Care Act.. This suit is authorized and instituted pursuant to the exercise of the police power of the State for the protection of the public safety, health, and morals and to promote the general welfare and fulfillment of the provision to the Constitution of the State of New Jersey and the United States of America guaranteeing civil rights.

## PARTIES

4. Julie Doerrmann is a resident of the City of Sewell, County of Gloucester and State of New Jersey. Plaintiff Arline Doerrmann, now deceased, was profoundly deaf and communicated in American Sign Language during her entire life. Plaintiff, Julie Doerrmann, her daughter, is profoundly deaf and communicates through American Sign Language. They require qualified American Sign Language

interpreters, reasonable accommodations/modifications and other auxiliary aids and services to communicate effectively with Defendant and to benefit from Defendant's services. Plaintiff Julie Doerrmann brings this action on behalf of herself as a disabled person under the relevant statutes and on behalf of her deceased mother who was a disabled person under the relevant statutes. Plaintiffs are therefore qualified persons with a disability pursuant to Section 504, the ADA and NJLAD.

5. Defendant, Manor Care Health Services, is located at 550 Jessup Road, City of West Deptford, County of Gloucester and State of New Jersey. It is a public entity under the ADA and is a recipient of federal financial assistance. Thus, it is subject to the requirements of both the ADA and Section 504.

**FACTS**

6. One of the most important parts of the Americans with Disabilities Act is Title III, known as the "Public Accommodations and Services Operated by Private Entities". 42 U.S.C. Section 12181 et seq. The ADA prohibits discrimination based upon disability and specifically requires that covered entities ensure effective communication with disabled individuals with the provision of auxiliary aids.

7. The New Jersey Law Against Discrimination specifically prohibits discrimination based upon disability under 10:5-12.

8. Section 504 of the Rehabilitation Act of 1973, provides that "No otherwise qualified individual with a disability" shall be "excluded, denied or discriminated against" by any facility receiving "federal financial assistance".

9. The Affordable Care Act is the civil rights provision of the Affordable Care Act of 2010. Section 1557 prohibits discrimination on the basis of disability in health care programs and activities.

10. Defendant provides public accommodations within the meaning provided in each of the above laws.

11. As relevant to the present action, discrimination includes a failure to provide appropriate and reasonable auxiliary aids to plaintiffs who have a hearing loss to ensure effective communication. 28 C.F.R. Section 36.303(c).

12. Among these aids include a failure to provide interpreters to plaintiffs for the care of the Plaintiff Arline Doerrmann. These aids were requested and denied by the Defendant during Arline Doerrmann's treatment from December 23, 2020 until January 2, 2021 and on all occasions prior and thereafter.

13. Plaintiff Arline Doerrmann was a patient at Manor Care Health Services from December 23, 2020 until January 2, 2021. On December 23, 2020 Plaintiff Arline Doerrmann was transferred to Manor Care for rehabilitation after spending ten days in Inspira Medical Center due to COVID-19. During her stay at Inspira, interpreters were provided throughout so Plaintiffs could effectively communicate with medical staff. The social worker at Inspira arranged to have Plaintiff Arline transferred to Manor Care and a few days prior notified Manor Care of Plaintiffs' deafness and their need for interpreters during Plaintiff Arline's treatment. Plaintiff Julie Doerrmann , Arline's daughter, also called Manor Care and spoke to Manor Care ,making sure they were aware of their deafness and the need for qualified interpreters throughout Arline's care. Plaintiff also provided information about Deaf Hearing Communication Center, ("DHCC") an interpreter referral agency as defendant did not indicate they knew how to obtain an interpreter.

14. Thereafter immediately prior to her transfer, Arline's daughter Plaintiff Julie Doerrmann called Manor Care to request her mother be put next to her window every day so they could communicate via American Sign Language through the glass and so Plaintiff Julie Doerrmann could communicate with the staff through the window anticipating that an interpreter would be provided for both Plaintiffs. Plaintiff Julie Doerrmann was not able to go inside of her mother's room due to COVID-19 protocols.

15. On December 24, 2020 Plaintiff Julie Doerrmann visited her mother at Manor Care in the morning. She was able to talk to her mother in sign language through the window which was open slightly. Upon discovering there was no interpreter and no closed captioning on the television from her mother, Plaintiff Julie then wrote notes trying to communicate, with the LPN supervisor, Wanda. Plaintiff Arline had already tried to communicate to the staff through gesture that she required closed captioning and an interpreter as well. Plaintiff also provided contact information for the DHCC in writing once again. Plaintiff Julie Doerrmann wrote notes requesting that the closed captioning on the tv be turned on and once again that an interpreter was required. Unfortunately, Wanda and the other nurses all wore masks, making it very difficult for Plaintiffs to even try to understand what was being said. Despite Plaintiff Julie Doerrmann indicating that she also was deaf and did not understand, by gesture and pointing to her ears and shaking her head, the supervisor just continued talking at her causing much frustration. She also pointed to the notepad when Plaintiff Julie wrote that an interpreter was needed and just kept shaking her head no. Later that evening, Plaintiff Julie Doerrmann again returned to visit and wrote another note to nurses and aides to turn on the closed captioning and to please provide an interpreter. The staff indicated again that they did not know how to turn on the closed captioning despite Plaintiff Julie Doerrman's attempts to write down notes to show the nurse how to turn on the cc. The nurse further indicated that Arline Doerrmann would have to wait until December 28, 2020 for an original remote to turn it on and that perhaps the maintenance man then would be able to figure it out. Plaintiff Arline Doerrmann did not have closed captioning on her tv from December 23-27, 2020. The staff also indicated that Plaintiffs would need to wait in response to the request for an interpreter.

16. Plaintiff Julie Doerrmann returned home during this time and called Manor Care in order to use an interpreter over the phone. She was unable to

communicate with staff at Manor Care in person as they would not provide an interpreter and would not respond appropriately or take the time to read her notes and follow the instructions on them. On this call, Ms. Doerrmann again requested an interpreter for her mother and herself and again asked for the closed captioning to be turned on to the social worker Rebecca, explaining that she had requested this from the staff and that no one was doing anything to ensure communication with either Plaintiff. She was told Rebecca would look into this. This happened repeatedly throughout Plaintiff Arline's stay and no interpreter was provided. Meanwhile, Arline Doerrmann, bedridden, was unable to watch tv for five days as well as being totally isolated due to Defendant's failure to provide an interpreter and her inability to communicate throughout her stay. captioning.

17. Plaintiff Julie requested interpreters daily when she visited her mother. In addition, she made several calls to Manor Care requesting same to no avail. During Plaintiff Arline's treatment, she was often ignored and requests for treatment and care were not provided.

18. Finally on December 29, 2020 after speaking to her mother through facetime on an Ipad through sign language and learning that these problems continued, Plaintiff Julie called DHCC herself and spoke to a Coordinator named Peri. Peri told Plaintiff, that they would call Defendant Manor Care to explain about ADA compliance and that writing back and forth did not ensure effective communication with deaf individuals who communicated primarily in sign language and that having a video remote interpreter ("VRI") would ensure same. The VRI could be provided through an app on the IPAD defendant obviously utilized.

19. On December 31, 2020 Jeanne Bonnes of the DHCC called Plaintiff Julie to inform her that she had called and explained all about the ADA and what was required to Rebecca the social worker. Ms. Bonnes said they insisted on using note writing. Plaintiff Julie then called Rebecca who said they would use notes to

communicate despite Plaintiff once again explaining there was repeated misunderstanding between her mother, Arline and the staff due to writing. Plaintiff Julie explained that English is a second language for both her and her mother and that they could not communicate effectively during the treatment without an interpreter. Plaintiff Julie begged once again that they please use a video remote interpreter and was refused.

20. On December 31, 2020, after defendant's refusal to provide interpreters once again, Plaintiff Julie felt she had no choice but to transfer her mother back home and care for her herself due to this lack of communication. She was told that her mother could not be transferred until January 5, 2021. However, on January 2, 2021, Plaintiff Arline became so ill she was transferred back to Inspira. Thereafter upon her release, both Plaintiffs refused transfer to Manor Care due to their failure to accommodate their disability and Plaintiff Arline was transferred to another rehabilitation center which provided video remote interpreting services during her treatment.

21. Throughout Plaintiff Arline Doerrmann's stay at Manor Care, she was seen by various nurses, doctors and staff without the utilization of an interpreter despite Plaintiffs repeated requests resulting in ineffective communication. Ms. Doerrmann was forced to remain in her room without any understanding of her medical treatment, rehab, or general well-being. Ms. Doerrmann became depressed and isolated during her stay at Manor Care due to her inability to understand the tv, inability to speak to staff, and other patients. She was unable to voice her complaints or needs due to lack of an interpreter or VRI. Her daughter plaintiff Julie Doerrmann was also unable to communicate with staff about her mother during her frequent visits without the aid of an interpreter. Without an interpreter being provided to them, Plaintiffs were unable to communicate effectively during critical aspects of her treatment. This led to

Plaintiffs not having a complete understanding of what took place during her medical treatment. Plaintiffs were unable to participate in and ask questions about Arline's medical treatment, diagnosis, prognosis as well as have the discharge instructions explained to them all due to no interpreter being provided by Defendant hospital on from December 23, 2020 to January 2, 2021. This also led Plaintiffs to feeling frustrated, scared and upset about the lack of communication during Arline's treatment. All requests by Plaintiffs for a live sign language interpreter were ignored by defendant.

22. Plaintiffs were ignored, humiliated and treated like non-persons by Defendants. Defendants' actions resulted in Plaintiffs being irretrievably denied the complete understanding of the care received while at the Hospital's Facilities. Instead, Plaintiffs experienced shame, anxiety, frustration, emotional distress, fear and discrimination. Further, Arline Doerrmann's care was made more difficult and painful by her inability to communicate with the nursing staff and doctors in a manner in which she could understand.

23. During the Plaintiff Arline's admission to defendant facility, she was requested to sign consent forms and other forms involving procedures without an interpreter present. Plaintiffs did not fully understand what treatment was to be performed on her and was often unaware of her diagnosis, prognosis and was unable to fully understand what treatment was to be performed on her.

24. Each and all of the above acts, both of omission and commission, were intentional acts of discrimination and each and all were a proximate cause of the damages suffered by plaintiff.

25. Defendant's willful, knowing and repeated acts of intentional discrimination against plaintiff evidences a pattern and practice of discrimination that is in violation of N.J.S.A. 10:5-1, et seq., the ADA and the Rehabilitation Act and caused plaintiff to suffer and continue to suffer mental pain and anguish.

## CLAIMS

26. Plaintiffs reallege and incorporate by reference the allegations of fact contained in the previous paragraphs.

## FIRST COUNT
## DEFENDANTS VIOLATED TITLE III OF THE AMERICANS WITH DISABILITIES ACT

27. Plaintiffs' hearing loss substantially limits their major life activities, including their ability to effectively communicate. Therefore, Plaintiffs are individuals with a disability under Title III of the ADA. Plaintiffs meet the essential eligibility requirements for Defendants' programs, services, and activities at all times material hereto. Thus, Plaintiffs are qualified individuals with a disability and are entitled to the protections of the ADA under 29 USCS Section 794, et seq.

28. Defendant violated Title III of the ADA in numerous ways, including discriminatory actions which occurred when they:

(a) Failed to maintain policies and procedures to ensure compliance with Title III of the ADA, specifically policies that provide equal access and effective communication to individuals with disabilities;

(b) Failed to ensure that communications with Plaintiffs were as effective as communications with non-disabled patients;

(c) Failed to provide auxiliary aids and services, including qualified interpreters, and to modify policies and procedures to prevent discrimination against Plaintiffs;

(d) Failed to establish effective self-evaluations and/or provide notice of Plaintiff's rights as individuals with a disability under the ADA;

(e) Failed to train staff on how to utilize the video remote interpreting system; and

(i) Excluded Plaintiffs from services of the public entity and denied Plaintiffs the benefit of these services due to their disability.

29. Plaintiffs suffered severe emotional distress and damages in the past, and continue to suffer emotional distress and damages due to Defendants' violations of Title III of the ADA.

## SECOND COUNT
## DEFENDANT VIOLATED SECTION 504 OF THE REHABILITATION ACT OF 1973

30. Plaintiffs are and were deaf and their disability substantially limits their major life activities, including their ability to effectively communicate with others who do not know sign language. Therefore, Plaintiffs are considered to be individuals with disabilities under Section 504, as amended, See 29 U.S.C. §706(8). Plaintiffs are otherwise qualified under Section 504 because they meet the essential eligibility requirements for Defendants' services at all times material hereto. Defendants are also recipients of federal financial assistance.

31. Defendant's policies, practices and procedures, particularly the actions and omissions described above, violated the Plaintiff's rights under Section 504 by discriminating on the basis of disability.

32. Additionally, Defendant also denied Plaintiffs services which it made available to non-disabled patients.

33. Defendant violated Plaintiff's rights through repeated refusals to reasonably accommodate Plaintiffs with appropriate auxiliary aids and services or to modify policies and procedures to prevent discrimination.

34. Plaintiffs suffered severe emotional distress and damages in the past, and continues to suffer distress and damages due to Defendant violations of Section 504.

## THIRD COUNT
## DEFENDANT VIOLATED THE AFFORDABLE CARE ACT

35. At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. §18116 was in fill force and effect and applied to defendant's conduct.

36. At all times relevant to this Action, Section 1557 incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. §705(9).

37. At all times relevant to this action, plaintiff's primary language for communication was American Sign Language and not English; and plaintiffs had limited ability to read, write, speak or understand English and were individuals with limited English proficiency within the meaning of Section 1557, 45 C.F.R. §92.4.

38. At all times relevant to this action, Defendant received federal financial assistance, including Medicaid reimbursements, and as principally engaged in the business of providing health care.

39. Pursuant to Section 1557, "an individual shall not, on the ground prohibited under... Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of or be subjected to discrimination under any health program or activity, any part of which is receiving Federal Financial assistance...

40. Defendant has discriminated against plaintiffs on the basis of their disabilities and their limited English proficiency by denying them meaningful access to the services, programs and benefits the defendant offers to other individuals by refusing to provide auxiliary aids and services to ensure effective communication.

41. Defendant discriminated against the individual plaintiffs by failing to ensure effective communication through the providing of qualified sign language interpreters on site and/or through Video remote interpreters.

42. Plaintiffs are therefore entitled to seek and recover compensatory damages and for injuries and loss they sustained as a result of defendant's discriminatory conduct and deliberated indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

43. Plaintiffs are further entitled to an award of attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a), the Rehabilitation Act, 29 U.S.C. § 794(a)

## FOURTH COUNT
## DEFENDANT VIOLATED THE NEW JERSEY LAW AGAINST DISCRIMINATION

44. At all times relevant to this action, plaintiffs have had a substantial impairment to the major life activity of hearing and speaking and thus are qualified individuals with a disability.

45. At all times relevant to this action, defendant facilities at which plaintiffs were treated were and are places of public accommodation within the meaning of the NJLAD.

46. Discrimination under the NJLAD includes any failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services or otherwise treated differently than other individuals because of the absence of reasonable modifications in policies, practices or procedures or auxiliary aids and services.

47. As set forth in the foregoing allegations about plaintiffs' treatment by defendant and its agents and medical personnel operating within its facilities,

defendant has discriminated against and continues to discriminate against the individual plaintiffs' on the basis of their disability by denying them meaningful access to the services, programs and benefits the defendant offers to other individuals.

48. Plaintiffs are therefore entitled to seek and recover all appropriate compensatory damages, injunctive relief and attorneys' fees they sustained as a result of defendant's discriminatory conduct and deliberate indifference.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray that this Court grant the following relief against the Defendant, for the following:

49. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's practices, policies and procedures have subjected Plaintiffs to discrimination in violation of Section 504 of the Rehabilitation Act, Title III of the Americans with Disabilities Act, and the New Jersey Law Against Discrimination.

50. Permanently enjoin Defendant from any practice, policy and/or procedure which will deny Plaintiffs equal access to, and benefit from Defendant's services or which deny Plaintiffs communication with Defendant. Enter a permanent injunction ordering Defendant:

    A. To cease discrimination against Plaintiffs and other deaf or hard of hearing patients;

    B. To promulgate and comply with policies and procedures to ensure that Defendant and its staff do not discriminate against individuals who are deaf and hard of hearing;

  C. To promulgate and comply with procedures to ensure that Defendant will provide and pay for interpreter services when needed by individuals who are deaf or hard of hearing in all services offered by Defendant;

  D. To promulgate and comply with procedures to ensure that Defendant will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Defendant will provide sign language interpreters, Videophones, and other communication services to ensure effective communication with and for deaf or hard of hearing persons.

51. Award compensatory and punitive damages;

52. Award reasonable costs and attorneys' fees; and

53. Award any and all other relief that may be necessary and appropriate.

## JURY DEMAND

54. Plaintiffs demand trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

    Respectfully submitted,

     /s/ Clara R. Smit
    CLARA R. SMIT, ESQ.
    Attorney for Plaintiff

Dated: July 7, 2021

## CERTIFICATION

Pursuant to Rule 4:5-1, I, Clara R. Smit, certify that I am a member of the firm of Clara R. Smit, attorney for the Plaintiff stated herein. To my information and belief, the matter in controversy is not the subject of any other action pending in any other Court, or of a pending arbitration proceeding and no other action or arbitration proceeding is being contemplated. At this time, the Plaintiffs know of no other party who should be joined in this action.

/s/ Clara R. Smit
Clara R. Smit, Esq.
Attorney for Plaintiff

Dated: July 7, 2021